UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NICHOLAS COTTON,

                        Plaintiff,

                -against-

NY MINUTE MOVERS, INC. and MICHAEL
DIASPARRA,

                        Defendants.
----------------------------------------------------------------X

**REPORT &
RECOMMENDATION**
20-CV-6153-CBA-SJB

**BULSARA, United States Magistrate Judge:**

      On December 18, 2020, Plaintiff Nicholas Cotton ("Cotton") brought this action against NY Minute Movers, Inc. ("NY Minute Movers"), and Michael Diasparra ("Diasparra" and collectively, "Defendants"), alleging claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  (Compl. dated Dec. 16, 2020 ("Compl."), Dkt. No. 1).  On September 15, 2021, Cotton moved for a default judgment against Defendants.  (Second Mot. for Default J. dated Sep. 15, 2021, Dkt. No. 15).  For the reasons stated below, it is respectfully recommended that the motion for default judgment be granted as indicated herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

      Cotton resides in Brooklyn, New York.  (Compl. ¶ 5).  NY Minute Movers is a New York moving company with its principal place of business in Brooklyn, New York.  (*Id.* ¶ 6).  Diasparra owns, controls, and/or manages NY Minute Movers.  (*Id.* ¶¶ 7, 19). Cotton was employed by Defendants as a "helper" from May 30, 2020 to December 2, 2020.  (*Id.* ¶¶ 12, 14).  Cotton alleges that he worked five days each week for 12 hours per day, for a total of sixty hours each week.  (*Id.* ¶ 15).  Defendants paid Cotton New York's

minimum hourly wage of $15 but did not pay him overtime wages.  (*Id.* ¶¶ 11, 13, 21, 32–53).  In addition, Cotton alleges that Defendants failed to follow various state notice and record-keeping requirements.  (Compl. ¶¶ 54–62).

Cotton commenced this action on December 18, 2020.  (*Id.*).  He alleges four causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL and its implementing regulations; (3) failure to provide a wage notice under NYLL § 195(1); and (4) failure to provide wage statements under NYLL § 195(3).  (*Id.* ¶¶ 32–62).  NY Minute Movers was served with a summons and a copy of the Complaint on January 8, 2021, (Summons Returned Executed dated Jan. 8, 2021, Dkt. No. 5), and Diasparra was served with a summons and a copy of the Complaint on March 20, 2021, (Summons Returned Executed dated Mar. 22, 2021, Dkt. No. 6).  Defendants failed to appear, answer, or otherwise respond to the Complaint.  Cotton sought a certificate of default against NY Minute Movers, which the Clerk of Court granted.  (Certificate of Default dated April 2, 2021 ("NY Minute Movers Certificate of Default"), Dkt. No. 8).[1]  Cotton sought a certificate of default against Diasparra, and the Clerk of Court entered a default as to him.  (Certificate of Default dated Aug. 30, 2021 ("Diasparra Certificate of Default"), Dkt. No. 12).  On September 15, 2021, Cotton renewed his motion for default judgment against both Defendants.

Cotton seeks recovery of: (1) $10,125 in unpaid overtime wages and an additional $10,125 in liquidated damages on his overtime claims; (2) $5,000 in penalties for not

---

[1] Cotton filed a motion for default judgment on August 18, 2021, Mot. for Default J. dated Aug. 18, 2021, Dkt. No. 9, but on August 26, 2021, withdrew it, Mot. to Withdraw dated Aug. 26, 2021, Dkt. No. 10, after the Court ordered Cotton to show cause why it should not be denied for failure to append a certificate of default pursuant to Local Civil Rule 55.2 and pointed out that Cotton did not obtain a certificate of default against Diasparra.  Order to Show Cause dated Aug. 26, 2021.

receiving required wage notices; and (3) $5,000 in penalties for not receiving required wage statements.  (Decl. of Lawrence Spasojevich dated Sept. 15, 2021 ("Spasojevich Decl."), Dkt. No. 15-2 ¶¶ 26–28).

DISCUSSION

I.   <u>Entry of Default</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id*. r. 55(b)(2).

The Clerk entered defaults against defendant NY Minute Movers and Diasparra on April 2, 2021 and August 30, 2021, respectively.  (NY Minute Movers Certificate of Default; Diasparra Certificate of Default).

A threshold question before reaching liability or damages is whether a defendant's conduct is sufficient to warrant default judgment being entered.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3)

3

the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted).

As to the first factor, the failure by Defendants to respond to the Complaint demonstrates their default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007). Defendants had sufficient notice of the present litigation. They were properly served with a summons and the Complaint. The motion for default judgment and certificates of default were similarly served upon them. Notwithstanding this notice and service, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, the Court cannot conclude there is any meritorious defense to Cotton's allegations because Defendants did not appear, and no defense has been presented to the Court. *See, e.g.*, *id.* at *1; *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012). As to the third factor, the non-defaulting party, Cotton, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074, at *2 (Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment against Defendants. The Court now turns to the liability imposed and damages to be awarded in such a judgment.

II.  <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.") (footnote omitted).  "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As outlined below, the Court respectfully recommends that Defendants be found liable for violations of the overtime provisions of FLSA and NYLL and the notice and

record-keeping requirements and wage statement provisions of the Wage Theft Prevention Act.

A.  FLSA Coverage

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); s*ee generally Tony & Susan Alamo Found.*, 471 U.S. at 295 n.8.  "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much.  Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402, at *1 (Feb. 22, 2013); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963, at *1 (Sept. 23, 2021).

The Court finds that Cotton has provided the factual detail necessary to support a finding that he was personally engaged in interstate commerce and protected by FLSA under the "individual coverage" prong.

"To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act." *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009) (per curiam).  "Employees are

6

'engaged in commerce' within the meaning of [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof."  29 C.F.R. § 779.103.  "[T]his includes every employee employed in the channels of such commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter."  *Id.*  To be "engaged in commerce," the work involving or related to the movement of persons or things "must be 'a substantial part of the employee's work.'"  *Jacome v. Optical 49, Inc.*, No. 20-CV2615, 2021 WL 3375134, at *7 (E.D.N.Y. July 9, 2021) (quotations omitted) (quoting *Klimchak v. Cardrona, Inc.*, No. 09-cv-4311, 2014 WL 3778964, at *6 (E.D.N.Y. July 31, 2014)), *report and recommendation adopted*, 2021 WL 3373130, at *1 (Aug. 3, 2021).  FLSA's implementing regulations provide that "as a general rule, employees who are regularly engaged in traveling across State lines in the performance of their duties (as distinguished from merely going to and from their homes or lodgings in commuting to a work place) are engaged in commerce and covered by" FLSA.  29 C.F.R. § 776.12.  Whether such work is a "substantial part of the employee's work" is a fact-specific inquiry.  *Id.*

Cotton alleges that he traveled "out of state approximately seven to ten times per month" in the course of his work for Defendants.  (Compl. ¶ 16).  This included traveling "between moving sites."  (*Id.* ¶ 17).  This is sufficient to satisfy the individual coverage test under FLSA because Cotton was "regularly engaged in traveling across State lines in the performance of [his] duties."  29 C.F.R. § 776.12; *e.g.*, *Leon v. Zita Chen*, No. 16-CV-480, 2017 WL 1184149, at *4 (E.D.N.Y. Mar. 29, 2017) ("Plaintiff alleges that he worked in defendants' factory and also installed and delivered products to defendants'

customers in New York, New Jersey and Connecticut.  Accordingly, plaintiff has established that he was engaged in commerce.") (internal citation omitted); *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 468–470 (S.D.N.Y. 2006) (finding employees who traveled across state lines two to four times per month were engaged in commerce).

Additionally, Cotton is an employee covered by FLSA.  Any "individual employed by an employer" is protected under FLSA's minimum and overtime provisions.  29 U.S.C. § 203(e)(1).  To determine whether an individual is "employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer.  In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and alterations omitted).  The Complaint alleges that Cotton was employed by Defendants, and there is no basis from the Complaint to infer anything other than that Cotton was working for a business owned and operated by someone else.  There is also no basis from the Complaint to infer that the employment relationship between Cotton and Defendants is exempt from FLSA.  *See* 29 U.S.C. § 203 (FLSA "definitions" and exemptions).

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not

less than one and one-half times the regular rate at which he is employed'[.]"² *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  A plaintiff "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 201) (citing *Lundy*, 711 F.3d at 114).  Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . . [,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89.  Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible" and thereby survive a motion to dismiss.  *Dejesus*, 726 F.3d at 90 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Complaint states that Plaintiff worked 60 hours each week for Defendants; approximately 12 hours a day, 5 days a week.  (Compl. ¶ 15).  The Complaint alleges that for the relevant time that Cotton worked for Defendants, May 30, 2020 through December 2, 2020, Defendants paid Cotton only the minimum wage in New York City, $15 per hour.  (*Id.* ¶¶ 11–13).  Cotton's claims include the necessary factual allegations to

---

² In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5.  The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum.  *Id.* § 778.5.

state a FLSA overtime violation.  Based on these undisputed allegations, the Court finds

that Defendants are liable for violations of FLSA's overtime provisions.[3]

B. <u>NYLL Liability</u>

Cotton also claims that Defendants violated NYLL for failure to pay overtime

wages.  The Court finds that Cotton has properly alleged liability under NYLL.

A covered "employee" under NYLL is "any individual employed or permitted to

work by an employer in any occupation[.]"  NYLL § 651(5); *see generally Gonzales v.*

*Gan Israel Pre-Sch.*, No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14,

2014).  There are a number of exemptions to that definition, none of which are

applicable in this case.  *See* NYLL § 651(5).  The Complaint alleges that Cotton was an

employee of Defendants, (Compl. ¶ 14), and that Defendants were an employer under

NYLL.  (*Id.* ¶¶ 6–8; 47).  The Court accepts these factual allegations as true, and

concludes that NYLL applies to Cotton.

i. <u>NYLL Overtime Claim</u>

NYLL's overtime provision specifies that eight hours constitutes a "legal day's

work," NYLL § 160, and that "[a]n employer shall pay an employee for overtime at a

---

[3] Cotton's counsel, in the motion papers, suggests that the Complaint includes a claim for unpaid minimum wages under both FLSA and NYLL.  *E.g.*, Spasojevich Decl. ¶¶ 5, 20, 24.  The Introduction of the Complaint suggests it will contain a claim for "unpaid wages at the minimum wage rate[,]" Compl. ¶¶ 1–2, but the Complaint's specific allegations only seek unpaid wages "at the overtime wage rate."  *Id.* ¶¶ 21–22, 25, 36–39, 44, 48–49, 51–52.  In other words, the specific causes of action do not even hint at a claim for unpaid minimum wages.  And in his allegations about his work and pay, Cotton only talks about unpaid overtime, not minimum wages.  *See id.*  Cotton's damages calculations nonetheless calculate wages as if he is entitled to payment for unpaid minimum wages.  *See* Undated Damages Calculations ("Damages Calculations"), attached as Ex. 7 to Spasojevich Decl. at 1–2.  Because Cotton does not make a claim for unpaid minimum wages in the Complaint, he thus is not entitled to such a recovery.

wage rate of one and one-half times the employee's regular rate[.]" 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Defendants failed to pay Cotton the required overtime hourly rate under NYLL. NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate. . . ." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Cotton asserts that he worked over 40 hours a week. Specifically, he alleges that he worked from 7:00 A.M. to 7:00 P.M. five days a week for a total of 60 hours each week. (Compl. ¶ 15). The Complaint alleges that Defendants did not pay Cotton the required overtime hourly wage. (*Id.* ¶¶ 47–52). The Court finds Defendants liable for unpaid overtime under NYLL.

## ii.   Wage Theft Prevention Act Claims

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)) (citing NYLL § 195(1)(a)). The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the

dates of work covered by the statement, the rate of pay, and gross and net wages paid. NYLL § 195(3).

The Complaint alleges that Defendants never provided Cotton with a wage notice at the start of his employment, or a wage statement with each payment, as required. (Compl. ¶¶ 54–62).  Accordingly, Cotton has sufficiently established liability on this claim.  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, No. 16-CV4028, 2018 WL 1770555, at *2 (E.D.N.Y. Apr. 12, 2018).

III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. Appx. 19, 20–21 (2d Cir. 2002). An employee may meet his burden of showing the amount and extent of his hours work through his own recollection. *See Pineda*, 831 F. Supp. at 674. As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371, at *1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 Fed. Appx. 44, 45 (2d Cir. 2015) (district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers") (citations omitted).

A.   Overtime Wages

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week. 29 C.F.R. § 778.105; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Accordingly, the overtime wage for each hour worked over 40 hours a week is $7.50. Although Defendants are liable under both FLSA and NYLL for failing to pay Cotton's overtime wages, Cotton cannot recover unpaid overtime compensation under both statutes for any period of overlapping work. *See Pinzon v. Paul Lent Mech. Sys. Inc.*, 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012). "If a plaintiff is entitled to damages under both federal and state wage law, the

Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." *Gamero v. Koodo Sushi Corp.*, No. 15-CV2697, 2017 WL 4326116, at *11 (S.D.N.Y. Sept. 28, 2017) (alteration in original) (quotations omitted).

The Court recommends Cotton be awarded recovery for unpaid overtime wages under NYLL. The Court may grant those damages which it can ascertain with reasonable certainty. *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 30 (E.D.N.Y. 2015). Cotton's Complaint alleges that he worked 12 hours a day, 5 days per week from May 30, 2020 through December 2, 2020. (Compl. ¶¶ 12, 15). Accordingly, the Court concludes that Cotton worked 20 hours of overtime each week for the roughly 27 weeks that he worked for Defendants, and is owed an additional $7.50 for each overtime hour worked, beyond what he was paid.[4]

Thus, the Court recommends that Cotton be awarded $4,050 in unpaid overtime wages under NYLL.

B.    Liquidated Damages

Cotton seeks liquidated damages under both FLSA and NYLL. (Pl.'s Mem. of Law in Supp. dated Sept. 15, 2021 ("Mem. of Law"), Dkt. No. 15-1 at 15–17). Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, which amended [ ] FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it

_____

[4] Cotton calculates damages using a figure of 27 weeks. *See* Damages Calculations at 2.

acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate [ ] FLSA." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages. An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due (prior to this, liquidated damages were 25 percent). *Id.* § 663(1).

In light of the default by Defendants, there has been no showing that it acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer.") (quotations and citation omitted); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (Nov. 21, 2016). Therefore, the Court recommends that liquidated damages be awarded under NYLL.

Based on the recommendation that Cotton be awarded $4,050 in unpaid overtime damages under NYLL, the Court recommends that Cotton be awarded $4,050 in liquidated damages under NYLL.

C.    Wage Theft Prevention Act Damages

Cotton worked for Defendants for approximately 27 weeks.  For the wage notice claim, he is entitled to recover $50 per day up to a maximum of $5,000.  NYLL § 198(1-b).  For the wage statement claim, he is entitled to recover $250 per day up to a maximum of $5,000.  *Id.* § 198(1-d).  Because Cotton never received a wage notice or wage statements from Defendants, and because Cotton worked for Defendants for more than 100 days, he is entitled to the statutory maximum of $5,000 under each provision.  *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order Adopting R. & R. dated Mar. 23, 2021; *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020).

D.    Pre-Judgment Interest

Cotton also seeks pre-judgment interest for his NYLL unpaid overtime claim.  (Compl. Prayer for Relief at 11; Mem. of Law at 18–19).  Although it is "well settled" that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (adopting report and recommendation), "NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin*, 93 F. Supp. 3d at 48.  Cotton is entitled to an award of pre-judgment interest on his NYLL damages at a rate of 9% per year.  New York Civil Practice Law and Rules § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  *Id.* § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (adopting

report and recommendation). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.[5] *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]") (quotations omitted). The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed. . . ." *See Gunawan*, 897 F. Supp. 2d at 93 (collecting cases).

The recommended overtime recovery available under NYLL is $4,050. The Complaint was filed on December 18, 2020. Cotton's first day of work was May 30, 2020. There are 202 days, or about 29 weeks, between these dates. Half of 202 is 101; 101 days from May 30, 2020 is September 8, 2020. The Court respectfully recommends that pre-judgment interest be awarded by the Clerk of Court in a daily amount of $1.00 per day from September 8, 2020, until the date final judgment is entered.[6]

E.     Post-Judgment Interest

Cotton also requests post-judgment interest pursuant to 28 U.S.C. § 1961. (Compl. Prayer for Relief at 11; Mem. of Law at 19). The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)

───────────────

[5] Pre-judgment interest is calculated based on the unpaid wages due under the NYLL, not on liquidated damages. And pre-judgment interest is not available for violations of the wage statement or wage notice provisions of NYLL. *See Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-cv-1015, 2019 WL 2436375, at *6 n.7 (E.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56849, at *1 (Mar. 29, 2019).

[6] The total amount ($4,050) at nine percent annually results in approximately $364.50 per year in interest, or $1.00 per day (rounded) based on 365 days per calendar year.

(quoting 28 U.S.C. § 1961(a)).  The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment. *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered against Defendants and Cotton be awarded:

- $4,050 in unpaid overtime wages;

- $4,050 in liquidated damages;

- $10,000 in Wage Theft Prevention Act damages;

- Pre-judgment interest in an amount to be calculated by the Clerk of Court of $1.00 per day from September 8, 2020 until the entry of final judgment; and

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

Cotton shall serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.  Counsel for Cotton is directed to file a motion for reasonable attorney's fees and costs by **August 29, 2022**.

SO ORDERED.

 /s/ *Sanket J. Bulsara*  7/28/2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York